CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 29 2019

JULIA C. DUDLEY, CLERK
BY:
 DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JAMES PAUL DESPER, | ) | CASE NO. 7:17CV00549 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| HAROLD CLARKE, ET AL., | ) | By: Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

James Paul Desper, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that prison officials have denied him visitation with his minor daughter, in violation of his constitutional rights. Upon review of the record, the court finds that Desper has failed to state a claim upon which relief can be granted.

I. BACKGROUND

Desper has been in prison since September 2009 and is currently confined at Augusta Correctional Center.[1] He is incarcerated for three convictions of forcible rape through the mental incapacity or helplessness of the victim, involving an 18-year-old woman, who was determined to have the overall mental capacity of an eight-year-old child. See Desper v. Commonwealth, No. 2116-10-3, 2011 WL 5346030 (Ct. App. Nov. 8, 2011). He has also been convicted for indecent liberties with a child, failing to register as a violent sex offender, probation violations, and credit card larceny and forgery.

Desper's mother, Glenda Desper ("Glenda"), has legal and physical custody of his minor daughter, K.D., who was not the victim of Desper's sexual offenses. Between September 2009 and December 2015, Desper was allowed prison visitation with KD.

---

[1] The facts summarized herein are based on online court records and Desper's amended complaint and other documentation he has submitted and incorporated by reference into his claims.

On March 1, 2014, amendments to Virginia Department of Corrections ("VDOC") visitation regulations in Operating Procedure ("OP") 851.1 took effect. Section IV(C)(12) of OP 851.1 provided that

> [o]ffenders with any conviction requiring registration in the *Sex Offender and Crimes against Minors Registry* will not be allowed to visit with any minor until granted a sex offender visitation exemption. (Minors currently approved for such visits on the effective date of this operating procedure may be allowed to continue visiting pending review for an exemption.)

Compl. Ex. 2, ECF No. 1-2. The procedure only allowed exemptions for a sex offender inmate to visit with his biological child, legally adopted child, or step-child, if that child was not a victim of his crimes. To be eligible for an exemption, a sex offender must have been free of disciplinary charges for six months, with no court order in effect prohibiting or restricting visitation.

The process to apply for an exemption under OP 851.1(IV)(C)(12), in 2014 and currently, requires the inmate to complete a questionnaire about his offenses and steps he has taken toward being accountable for his offense conduct, and about his child, their relationship, and how visitation will be beneficial to the child. The parent or guardian of the minor child must also complete and mail a questionnaire to the inmate's counselor, to provide, among other things, information about the adult's knowledge of the offender's crimes, the child's relationship to the inmate, their prior visits, the child's interest in future visitation and potential benefits from it, and the adult's concerns if any. These submissions are then reviewed by an evaluator, who conducts an assessment of the inmate, including a Mental Status Evaluation ("MSE"), review of the inmate's personal, social, and sexual history, and an "actuarial assessment." Id. The evaluator then forwards the completed assessment of the inmate's visitation exemption request, and the questionnaires completed by the inmate and the child's guardian for review by the Sex Offender

Visitation Committee ("Committee"). This Committee meets quarterly to consider visitation exemption requests and accompanying documentation, and to decide whether to recommend the exemption. Final approval of these recommendations comes from a designated prison administrator. If the inmate's application for a visitation exemption is denied, there is no appeal. After one year, however, the inmate may reapply for a sex offender visitation exemption.

After these visitation procedures first took effect in March 2014, Desper failed to file a visitation exemption request as the policy required. Nevertheless, for almost two years, officials allowed him discretionary visitation with K.D. to give him an opportunity to apply for an exemption. Desper first learned in February 2016 that officials had removed K.D. from his list of approved visitors. In March 2016, Desper and Glenda submitted the required paperwork for a sex offender visitation exemption application. A mental health professional evaluated Desper a few weeks later. Desper submits evidence indicating that he has had extensive mental health issues.

Ultimately, in February 2017, Glenda learned that the visitation exemption request had been denied more than six months earlier. Desper and Glenda completed the paperwork for a second visitation exemption application in June 2017. A different mental health professional evaluated Desper in August. The visitation exemption was denied in September 2017. Neither Desper nor Glenda as K.D.'s legal guardian was notified of the denial or was provided any specific reason that Desper's visitation exemption requests were denied. A letter from K.D. indicates that in March 2018, she was twelve years old.

Desper then filed this § 1983 action, naming as defendants VDOC Director Harold Clarke, Chief of Operations A. David Robinson, and several Jane/John Doe defendants. Plaintiff also filed a motion for summary judgment and a motion for preliminary injunctive relief, and the

3

defendants responded to these motions. Defendants Clarke and Robinson have also filed a motion to dismiss. Desper has responded by filing two motions for leave to file an amended complaint, which the court will grant.

Desper's amended complaint sues Clarke and Robinson ("defendants"); Maria Stransky, Sex Offender Program Director; Marie Vargo, Corrections Operations Administrator; and Jane/John Does—unnamed members of the Committee. Desper contends that these individuals' actions, depriving him of visitation with K.D. since December 2015, have violated his constitutional rights under the Association Clause of the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[2] As relief, Desper seeks declaratory and injunctive relief, and punitive damages.

## II. DISCUSSION

### A. The Motion to Dismiss

A district court should dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure if, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege "enough facts to state a claim to relief that is plausible on its face."[3] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

---

[2] The initial complaint also raised an ex post facto claim, but Desper does not pursue this claim in his amended complaint.

[3] The defendants' responses in opposition to Desper's motion for summary judgment and motion for interlocutory injunctive relief include sworn affidavits and other documentation. In considering the motion to dismiss filed by defendants Clarke and Robinson, however, the court has not considered any of these matters outside the pleadings. On that basis, the court has also denied Desper's motion to compel discovery.

4

will not do." Id. at 555.[4] To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

    1. First Amendment

Neither the Supreme Court nor the United States Court of Appeals for the Fourth Circuit has recognized a clearly established constitutional right to visitation while in prison. Williams v. Ozmint, 716 F.3d 801, 806 (4th Cir. 2013) (citing Overton v. Bazzetta, 539 U.S. 126, 131 (2003)). In fact, controlling case law in the Fourth Circuit holds that "there is no constitutional right to prison visitation, either for prisoners or visitors" under the Freedom of Association Clause of the First Amendment. White v. Keller, 438 F. Supp. 110, 115 (D. Md. 1977), aff'd, 588 F.2d 913 (4th Cir. 1978); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) holding that "[prisoner] has no constitutional right to physical contact with his family"). "Freedom of physical association is inconsistent with an incarcerative penal system. Accordingly, this court believes that prisoners have no associational right to receive visitors. This right is lost in accordance with due process at the time of criminal judgment." White, 438 F. Supp. at 117.

> [F]our factors are relevant in deciding whether a prison regulation affecting a constitutional right that survives incarceration withstands constitutional challenge: whether the regulation has a "'valid, rational connection'" to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are "ready alternatives" to the regulation.

---

[4] The court has omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

Overton, 539 U.S. at 132 (quoting Turner v. Safley, 482 U.S. 78, 89-91 (1987)). Applying the Turner factors, the Court upheld the visitation restrictions at issue in Overton and expressly held that they furthered legitimate penological interests in maintaining internal security and protecting child visitors from sexual misconduct.

Even if Desper retains some constitutional right to visit with his daughter, the VDOC visitation regulation similarly withstands his § 1983 challenge under the Turner factors. First, *the regulation and its requirements bear a clear and reasonable relationship to the state's interest in protecting children from sexual misconduct and in promoting sex offender treatment success.* See Overton, 539 U.S. at 133 ("Protecting children from harm is also a legitimate goal."); Alex v. Beard, No. CIV. 1:CV-09-1711, 2010 WL 1416837, at *4 (M.D. Pa. Apr. 6, 2010) ("[I]t is logical that where prison officials believe a sex offender's contact with any particular individual would not promote treatment or rehabilitation efforts, visitation with particular individuals should be prohibited."). To continue visitation after the regulation took effect, Desper had to apply for an exemption and undergo an assessment to ensure that visitation with K.D. was safe for her. Only after he failed to do so after many months did officials disapprove continued visits unless he obtained an exemption. The assessment did not reach the result Desper and his mother desired. Nevertheless, that assessment requirement was reasonably related to K.D.'s safety, given Desper's admitted history of mental health problems and sex offenses with teenagers. Furthermore, the denials of visitation were not permanent. Desper may reapply for a visitation exemption every year. Over time in his treatment program, the safety assessment may change.

Second, Desper retains other means of communicating with K.D. and maintaining his relationship with her. He may speak with her on the telephone, correspond with her through letters, and convey messages to her through Glenda or other family members who visit him. See

Overton, 539 U.S. at 135 (noting that sex offenders "can communicate with those who may not visit by sending messages through those who are allowed to visit," and "[t]hey . . . may communicate with persons outside the prison by letter and telephone," in satisfaction of second Turner factor). "[T]he fact that [Desper] may maintain contact with [K.D.] through means other than visitation supports the reasonableness of the [prison visitation] policy." Wirsching v. Colorado, 360 F.3d 1191, 1201 (10th Cir. 2004).

Third, allowing Desper to resume visitation with K.D. without the safety assessment process the visitation procedure requires would "impair the ability of corrections officers to protect all who are inside a prison's walls." Overton 539 U.S. at 131.. In such circumstances, the court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Id. at 132.

Fourth, Desper has not proposed any ready alternative to the existing regulation that would further the same interests to the same extent. He simply insists that he should be granted an exemption, based on his past visitation with K.D. and his desire to resume it. As discussed, the amended visitation regulation does not end Desper's ability to maintain a relationship with K.D. It merely limits sex offenders' physical visitation with their minor children to those who obtain the exemption—after a personalized assessment determines that such visits do not pose a safety risk to the child or undermine the offender's treatment program.

For the stated reasons, the court concludes that Desper's allegations fail to state a claim upon which relief can be granted. Accordingly, the court will grant the motion to dismiss, and deny Desper's motion for summary judgment,[5] as to his claims under the First Amendment.

2. Due Process

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. To state a claim that officials have deprived him of a constitutionally protected liberty interest without due process, "a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). The Supreme Court has rejected the argument that "unfettered visitation is guaranteed directly by the Due Process Clause." Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989). "The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause." Id. at 461. Therefore, to prove that he has a protected liberty interest at stake here, Desper must (a) point to "a basis for an interest or expectation in state regulations" in visitation, Prieto, 780 F.3d at 250; and (b) show that denial of that interest imposed on him an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."[6] Sandin v. Connor, 515 U.S. 472, 484 (1995).

First, the VDOC's decision to change its visitation policies did not implicate Desper's constitutional rights. It is well established that state official's failure to abide by procedural rules

---

[5] A court can grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because the court herein determines that Desper fails to state any claim upon which relief can be granted, the court also concludes that he cannot be entitled to judgment as a matter of law, and denies his motion accordingly.

[6] Only if Desper makes both of these showings does the Due Process Clause require a particular measure of procedural protection before his visitation status changes. Sandin, 515 U.S.at 487.

8

and regulations does not, in and of itself, state a federal due process issue. Riccio v. Cty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990).

Second, Desper cannot make either of the required showings to establish a protected liberty interest arising from the VDOC's procedure as amended in 2014. Certainly, the policy does not create an expectation that Desper, as a sex offender, can continue visitation with K.D. while she is a minor. Rather, the policy prohibits sex offenders from visitation with their minor children until they undergo the safety assessment and obtain an exemption. The lack of any policy-created expectation that Desper and K.D. can continue visitation is fatal to his procedural due process claim. See, e.g., Ky. Dep't of Corr., 490 U.S. at 462-63. Moreover, the court cannot find that the visitation policy changes imposed an atypical and significant hardship on Desper compared to ordinary prison circumstances. Id. at 461 (finding "denial of prison access to a particular visitor" to be "well within the terms of confinement ordinarily contemplated by a prison sentence"). As discussed, Desper can maintain his relationship with K.D. while she is a minor through other available means of communication and can reapply every year for an exemption.

For the stated reasons, the court concludes that Desper fails to state a due process claim upon which relief can be granted. Therefore, the court will grant the motion to dismiss, and deny Desper's motion for summary judgment, as to this claim.

3. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment declares that "[n]o State shall . . . deny to any person . . . the equal protection of the laws." U.S. Const., amend. XIV, § 1. This provision does not altogether forbid states from classifying individuals; rather it "keeps

governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

> To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 82 (4th Cir. 2016) (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). When an inmate brings an equal protection claim, his allegations of unequal treatment must be analyzed in light of the prison's special security and management concerns. Morrison, 239 F.3d at 655. "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." Overton, 539 U.S. at 132. The court cannot find that Desper has met, or could meet, his burden to state an equal protection claim here.

First, Desper has not shown that he was treated differently than other sex offenders confined in VDOC prisons. Under the 2014 amendments to the visitation policy, all sex offenders were required to apply for an exemption and undergo the same type of assessment that Desper underwent. Second, he cannot show that he is similarly situated in all relevant respects to other sex offenders who <u>have</u> been granted exemptions to visit with their minor children. As a prerequisite for this exemption, evaluators must have determined that the inmate's criminal and mental health history and other factors did not create risks of potential harm to children's safety. Evaluators did not reach this conclusion about Desper, however, during the assessment of these same factors.

10

The court concludes that Desper fails to state any equal protection claim on which relief could be granted. Accordingly, the court will grant the motion to dismiss, and deny Desper's motion for summary judgment, on this claim.

### B. Other Matters

#### 1. The Motion for Interlocutory Injunctive Relief

Because preliminary injunctive relief is an extraordinary remedy, the party seeking such relief must make a clear showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Given the court's finding that Desper states no constitutional claim upon which relief can be granted under § 1983, he has not made a clear showing of a likelihood of success on the merits of his underlying claims in this lawsuit. Accordingly, he cannot meet all four Winter requirements for interlocutory relief. The court will deny his motion accordingly.

#### 2. Unserved and Unnamed Defendants

In his amended complaint, Desper adds two additional VDOC officials—Stransky and Vargo. These defendants are not yet parties to this action, because the court has not accomplished service upon them. Before doing so, however, the court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). Given the court's finding herein that Desper fails to state any § 1983 claims, for that reason, the court must also summarily dismiss his claims against Stransky and Vargo, pursuant to § 1915A(b)(1).

Desper's amended complaint also names Jane and John Doe defendants. The court notified him by order entered March 8, 2018, that if he failed to provide the names of the Doe defendants, his claims against them would be dismissed without prejudice. He has failed to do so. Accordingly, all claims against the Doe defendants will be dismissed without prejudice, pursuant to Rule 4(m). In any event, for reasons already explained, Desper fails to state any actionable § 1983 claim against anyone. Thus, any amendment to name the Doe defendants now would be denied as futile.

### III. CONCLUSION

For the reasons stated, the court will grant Desper's motions to file an amended complaint; grant the motion to dismiss filed by defendants Clarke and Robinson; deny Desper's motions for summary judgment and interlocutory injunctive relief; and summarily dismiss all claims against other defendants, pursuant to § 1915A(b)(1) or Rule 4(m). An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to the parties.

ENTER: This 29th day of January, 2019.

_____
Senior United States District Judge